## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

LEE STARK, STARK BROTHERS,
INC., and A.R. STARK & CO., LLC,

        Plaintiffs,


v.                          **MEMORANDUM OF LAW & ORDER**
                             Civil File No. 07-4373 (MJD/AJB)


CHAD MONSON, individually and
d/b/a/ Chad Monson Excavating
and Chad Monson Aggregate; QRS
INCORPORATED; CHAD MONSON
EXCAVATING, LLC; and DONNERITE
CO. d/b/a/ Donnerite Company,

        Defendants.

_____

Joseph William Dicker, Dicker Law Office, Counsel for Plaintiffs.

Lauris A. Heyerdahl and Lisa M. Lamm, Foley & Mansfield PLLP, Counsel for
Defendants Chad Monson, Chad Monson Excavating, LLC, and QRS
Incorporated.

Michael J. Weidner, Law Offices of Michael J. Weidner, Counsel for Defendant
Donnerite, Co.

_____


## I.    INTRODUCTION

This matter is before the Court on Defendant Donnerite Co.'s Motion to Dismiss [Docket No. 5] and on the Motion to Dismiss by the remaining Defendants [Docket No. 10].  The Court heard oral argument on January 17, 2008.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    Allegations in the Complaint

Plaintiffs' Complaint alleges the following facts:

Plaintiff Lee Stark ("Stark") is the owner and sole shareholder of Plaintiff Stark Brothers, Inc., ("Stark Brothers") a Minnesota corporation.  (Compl. ¶¶ 1-2.) Stark Brothers owns a gravel crusher ("Crusher").  (Id. ¶ 2.)  Plaintiff A.R. Stark & Co., LLC ("A.R. Stark"), a Minnesota limited liability company, leased the Crusher from Stark Brothers.  (Id. ¶ 3.)

Defendant Chad Monson ("Monson") is engaged in the excavating and gravel business and does business under the assumed names "Chad Monson Excavating" and "Chad Monson Aggregate."  (Compl. ¶ 4.)  Defendant Chad Monson Excavating, LLC, is a Minnesota limited liability company through which Monson conducts business.  (Id. ¶ 5.)  QRS Incorporated ("QRS") is one or more business entities through which Monson conducts business.  (Id. ¶ 6.)

2

Defendant Donnerite Co. ("Donnerite") is a Minnesota corporation in the business of repairing vehicles and mechanical equipment.  (Id. ¶ 7.)

In May 2007, A.R. Stark was providing gravel crushing services when the Crusher disappeared.  (Compl. ¶¶ 19-20.)  Stark reported the theft of the Crusher to the police who learned that a similar crusher was for sale through the internet-based auction website Iron Planet.  (Id. ¶¶ 21-22.)  Police traced the crusher offered for sale to Donnerite's facility and identified it as the Crusher belonging to Stark.  (Id. ¶¶ 23, 27.)  Although substantial efforts were made to remove the serial number from the Crusher, there was an internal plate bearing the number that had not been removed.  (Id. ¶ 26.)  Donnerite had made repairs to the Crusher and "apparently" removed the serial numbers.  (Id. ¶¶ 32-33.)  The police learned that Monson orchestrated the theft and attempted sale of the Crusher.  (Id. ¶ 28.)

Plaintiffs further allege, "Monson and/or Donnerite and/or others acting in concer[t] with them and at their direction" sold the Crusher to a business in Wyoming and/or Idaho, and the buyer wired the purchase price to Monson. (Compl. ¶ 29.)  "Monson himself, or acting through one of his business entities, or through other individuals" offered the Crusher for sale through Iron Planet

and sold the Crusher to a buyer from "Wyoming and/or Colorado," who wire transferred the purchase price to Monson.  (Id. ¶¶ 36-37.)  Monson refunded the payment to the buyer after the police recovered the Crusher.  (Id. ¶ 38.)  Plaintiffs claim that, through these actions, "Monson established and implemented a conspiracy to steal the Crusher, falsify the records of the Crusher by removing or changing the serial number, and selling the Crusher to an out-of-state buyer."  (Id. ¶ 39.)  Monson took these actions to hurt Stark and damage the Stark Brothers and A.R. Stark businesses.  (Id. ¶ 40.)

Plaintiffs allege the following Racketeer Influenced and Corrupt Organizations ("RICO") allegations:

Monson Excavating is a "business enterprise," and Monson is the principal of Monson Excavating and other entities that constitute his business operations. (Compl. ¶¶ 46, 49.)  Monson and his businesses "employ numerous individuals and regularly conduct an on-going business."  (Id. ¶ 50.)  "Monson's business activities themselves constitute an 'enterprise.'"  (Id. ¶ 51.)  "Monson organized a criminal enterprise by recruiting other defendants to participate in a criminal conspiracy with him and his business entities for the purpose of stealing the Crusher and causing injury to the Plaintiffs."  (Id. ¶ 52.)  Monson owned,

4

directed, and conducted the affairs of the enterprise, and all other Defendants

participated in the enterprise's operations and racketeering activity.  (Id. ¶¶ 53,

55.)

The predicate racketeering acts alleged are felony robbery in violation of

Minn. Stat. § 609.24, bank fraud in violation of 18 U.S.C. § 1344, wire fraud in

violation of 18 U.S.C. § 1343, mail fraud in violation of 18 U.S.C. § 1341, and

engaging in an unlawful monetary transaction in violation of 18 U.S.C. § 1957.

(Compl. ¶¶ 65, 66, 69, 72.)  Plaintiffs conclude, "By these and other actions the

Defendants and their criminal enterprise have engaged in a pattern of

racketeering activities."  (Id. ¶ 76.)

## 2.    Allegations in Plaintiffs' Affidavits

In response to the motions to dismiss, Plaintiffs submit two affidavits: the

affidavit of Lee Stark and the affidavit of Joseph Dicker, Plaintiffs' attorney.

When considering this motion to dismiss, the Court disregards the information in

the affidavits to the extent Plaintiffs attempt to provide substantiation for and

expand upon the pleadings, and the Court will not convert Defendants' motions

to dismiss into motions for summary judgment.  See Stahl v. U.S. Dept. of Agric.,

327 F.3d 697, 701 (8th Cir. 2003) ("[T]he court has complete discretion to

determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." ) (citation omitted).  The Court has only considered Plaintiffs' allegations that they have been unable to obtain more specific allegations regarding the alleged theft and fraud because Iron Planet has a confidentiality agreement with its clients, so it would not disclose any information regarding any transaction without a court order or subpoena and because  the police will not provide more specific information until a charging decision has been made.

### B.    Procedural Background

On October 25, 2007, Plaintiffs filed a Complaint against Defendants and John Does and XYZ, Inc., in this Court.  Plaintiff's Complaint alleges one count: RICO in violation of 18 U.S.C. § 1962(c), (d).

## III.   DISCUSSION

### A.    Standard for a Motion to Dismiss

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted).  "In considering a motion to dismiss, the court must

construe the complaint liberally and assume all factual allegations to be true."

WMX Techs., Inc. v. Gasconade County, Mo., 105 F.3d 1195, 1198 (8th Cir. 1997)

(citation omitted).  Further, the court must accord reasonable inferences in favor

of the non-moving party.  Holloway v. Lockhart, 792 F.2d 760, 762 (8th Cir. 1986).

However, the court is not required to accept the legal conclusions drawn by the

pleader from those facts.  Wescott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir.

1990).

### B.   Requirements for Pleading a RICO Claim

RICO grants a private right of action to "[a]ny person injured in his

business or property by reason of a violation of section 1962 of this chapter."  18

U.S.C. § 1964(c).  Plaintiffs allege violations of sections 1962(c) and 1962(d) of

RICO, which provide:

> (c) It shall be unlawful for any person employed by or associated
> with any enterprise engaged in, or the activities of which affect,
> interstate or foreign commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprise's affairs through a
> pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any of
> the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962.

7

"To state a claim under § 1962(c), a plaintiff must establish (1) the existence of an enterprise; (2) conduct by the defendants in association with the enterprise; (3) the defendants' participation in at least two predicate acts of racketeering; and (4) conduct that constitutes a pattern of racketeering activity." In re Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig., 340 F.3d 749, 767 (8th Cir. 2003) (citation omitted).

## C.    Existence of an Enterprise

An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

### 1.    Existence of a RICO Enterprise Separate and Distinct from the Pattern of Racketeering Activity

An enterprise, as contemplated by RICO, has three essential characteristics: A common or shared purpose, some continuity of structure and personnel, and an ascertainable structure distinct from that inherent in a pattern of racketeering.  The third characteristic, that of a distinct structure, requires that the common activities of the enterprise extend beyond the minimal association necessary to sustain the pattern of racketeering.  That each member of a group carries on activities distinct from the pattern of racketeering is insufficient; the group as a whole must have a common link other than the racketeering activity.

8

McDonough v. Nat'l Home Ins. Co., 108 F.3d 174, 177 (8th Cir. 1997) (citations omitted).  "[A]n enterprise cannot simply be the undertaking of the acts of racketeering, neither can it be the minimal association which surrounds these acts."  Stephens, Inc. v. Geldermann, Inc., 962 F.2d 808, 815 (8th Cir. 1992 (citation omitted).

The "enterprise" is an element separate from the pattern of racketeering activity.  Handeen v. Lemair, 112 F.3d 1339, 1351 (8th Cir. 1997).  An enterprise is an "ongoing organization, formal or informal . . . [where] the various associates function as a continuing unit."  Atlas Pile Driving Co. v. DiCon Fin. Co., 886 F.2d 986, 995 (8th Cir. 1989) (citation omitted).  "Th[e] distinct structure might be demonstrated by proof that a group engaged in a diverse pattern of crimes or that it has an organizational pattern or system of authority beyond what was necessary to perpetrate the predicate crimes.  The command system of a Mafia family is an example of this type of structure as is the hierarchy, planning, and division of profits within a prostitution ring."  Diamonds Plus, Inc. v. Kolber, 960 F.2d 765, 770 (8th Cir. 1992) (citation omitted).  "The focus of the inquiry is whether the enterprise encompasses more than what is necessary to commit the predicate RICO offense."  Id.

There is no requirement that the enterprise conduct lawful activity, only that the case is not "an instance of a sporadic and temporary criminal alliance to commit one of the enumerated RICO crimes," and "proof the enterprise conducts lawful activity unrelated to the pattern of racketeering will often serve to prove the enterprise is separate from the pattern of racketeering." Diamonds Plus, Inc., 960 F.2d at 770, 770 n.5 (citations omitted).

Defendants assert that there are no allegations in the Complaint that the enterprise had any purpose other than carrying out the alleged acts of racketeering.  Defendants argue that if the pattern of racketeering is removed, the entities alleged to have associated to form the "enterprise" do not have an organizational pattern or system of authority beyond that which was necessary to perpetrate the predicate crimes.

The law requires that the entities of which the alleged RICO enterprise are comprised have some common link that extends beyond the minimal association necessary to sustain the racketeering activity.  The Complaint is not clear regarding the composition of the RICO enterprise.  At one point, Plaintiffs appear to allege that Monson Excavating is the "enterprise."  (Compl. ¶ 46.)  Then, in Paragraph 51, the Complaint alleges that Monson's business activities constitute

10

an "enterprise." This seems to allege an enterprise that is distinct from the RICO pattern - that Monson directs his businesses for legitimate purposes and also to carry out the RICO acts. However, the Complaint elsewhere states that the enterprise consists of all Defendants and alleges no common link other than the minimal association necessary to sustain the racketeering activity. (Compl. ¶ 52 ("Monson organized a criminal enterprise by recruiting other defendants to participate in a criminal conspiracy together with him and his business entities for the purpose of stealing the Crusher and causing injury to the Plaintiffs.").)

The Court concludes that the Complaint has failed to adequately plead this RICO element. It is not clear what "enterprise" is alleged, and there is no indication that Plaintiffs are pleading alternative theories of enterprise. The most likely interpretation is that the alleged enterprise is the association of all Defendants, which is alleged to be no more than the minimal association necessary to sustain the racketeering activity.

### 2. Identification of a RICO "Enterprise" Separate from the "Person" Who May Be Culpable under RICO

RICO prohibits a "person" associated with an "enterprise" from participating in the affairs of the enterprise through a pattern of racketeering

activity.  18 U.S.C. § 1962(c).  "[T]o establish liability under § 1962(c) one must

allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an

'enterprise' that is not simply the same 'person' referred to by a different name."

Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001).  " [A] named

defendant cannot by itself be an 'enterprise' – it must combine with someone or

something else to form an enterprise."  Francis v. Ecoquest Int'l, Inc., No. 4:06 CV

1168 DDN, 2007 WL 2362496, at *5 (E.D. Mo. Aug. 14, 2007) (unpublished) (citing

Atlas Pile Driving, 886 F.2d at 995).

As previously noted, while Plaintiffs are likely asserting that "Defendants

formed and constituted an enterprise within the meaning of 18 U.S.C. § § 1961(4)

and 1962(c) and (d)," (Compl. ¶ 53), this allegation fails to meet the distinctness

requirement as previously discussed.  If, in fact, Plaintiffs seek to allege that

Monson Excavating in the enterprise (Compl. ¶ 46), and Monson does business

under the names Monson Excavating and Monson Aggregate, then there is no

alleged distinction between Monson as a person and Monson Excavating.  A

third possibility is that Monson's business activities, including QRS, constitute an

enterprise.  (Id. ¶ 51.)  If Plaintiffs are alleging that Monson's legitimate business

activities constitute an enterprise, then, under Cedric, Monson is separate from

QRS and the enterprise such that there exists a person separate from the RICO enterprise.  <u>Cedric</u>, 533 U.S. at 166 (holding that RICO "applies when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner – whether he conducts those affairs within the scope, or beyond the scope, of corporate authority").  However, it is not clear from the Complaint that Plaintiffs are so alleging.  If Plaintiffs choose to re-file their Complaint, they must clarify the RICO "enterprise" at issue.

### D.     Participation

RICO requires that, to be liable, a person employed by or associated with the enterprise must "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  "[O]ne is not liable under that provision unless one has participated in the operation or management of the enterprise itself."  <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 183 (1993).

> Congress did not mean for § 1962(c) to penalize all who are employed by or associated with a RICO enterprise, but only those who, by virtue of their association or employment, play a part in directing the enterprise's affairs.  Furnishing a client with ordinary professional assistance, even when the client happens to be a RICO enterprise, will not normally rise to the level of participation sufficient to satisfy the Supreme Court's pronouncements in <u>Reves</u>.

13

> In acknowledgment of this certainty, a growing number of courts, including our own, have held that an attorney or other professional does not conduct an enterprise's affairs through run-of-the-mill provision of professional services.

Handeen v. Lemaire, 112 F.3d 1339, 1348 (8th Cir. 1997) (citations omitted).

Donnerite asserts the Plaintiffs' Complaint makes no specific allegations that Donnerite participated in the operation or management of the enterprise itself.  Donnerite argues that, instead, the Complaint merely alleges that Donnerite provided run-in-the-mill professional services.  It claims that simply making repairs on the Crusher at its facility, which are its usual professional services, cannot form the basis of a RICO claim.

The Court concludes that the Complaint adequately alleges participation by Donnerite.  First, Paragraph 29 alleges that Donnerite participated in listing the Crusher for sale on Iron Planet.  Additionally, Paragraphs 33 and 34  allege that the "repairs" that Donnerite made to the Crusher included "removal of the serial numbers" and damaging the Crusher.  These alleged repairs appear to be in furtherance of the crimes and are not "run-in-the-mill" professional services.

### E.     Existence of a Pattern

#### 1.     Pattern Requirement

Under 18 U.S.C. § 1961(5), a "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."  "[T]o prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."  H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989).  "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  Id. at 240 (citation omitted).

"To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity."  Id. at 240.  "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  Id. at 241 (citation omitted).

"[A] single scheme can constitute a RICO claim.  However, the single

15

scheme must still meet the requirements of relatedness and continuity." <u>Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank</u>, 934 F.2d 976, 981 (8th Cir. 1991).  "[A] single transaction which involves only one victim and takes place over a short period of time does not constitute the pattern of racketeering required for long-term criminal activity under a RICO claim." <u>Id.</u>  Thus, when the defendants use the mails and telephone to correspond in support of a scheme to defraud a single victim over a short period of time, there is no pattern.  <u>Id.</u>

Plaintiffs' Complaint alleges the following pattern of racketeering activities and predicate criminal acts.  First, it notes that the theft of the Crusher is a felony in violation of Minn. Stat. § 609.24.  Second, it alleges Defendants committed bank fraud by receiving property – funds deposited in a bank - which was in the control or custody of a banking institution in order to commit fraud and dispose of the stolen Crusher in violation of 18 U.S.C. § 1344.  Third, Plaintiffs allege Defendants committed wire fraud and mail fraud in violation of 18 U.S.C. §§ 1341, 1343, by using the phones and wires in furtherance of their scheme to steal and dispose of the Crusher and to defraud the buyer of the Crusher.  Fourth, Plaintiffs allege that Defendants engaged in monetary transactions from unspecified unlawful activities in violation of 18 U.S.C. § 1957, by causing the

buyer to transfer the purchase price of the stolen Crusher to their criminal

enterprise.

### 2.    Existence of Closed-Ended Continuity

"A party alleging a RICO violation may demonstrate continuity over a

closed period by proving a series of related predicates extending over a

substantial period of time.  Predicate acts extending over a few weeks or months

and threatening no future criminal conduct do not satisfy this requirement:

Congress was concerned in RICO with long-term criminal conduct."  H.J. Inc.,

492 U.S. at 242.

Defendants argue that, although Plaintiffs fail to allege any specific dates

in their Complaint, the predicate acts alleged could have spanned only a few

months at most because Plaintiffs allege that the Crusher "went missing" in May

2007 and the Complaint was served on some Defendants on November 1, 2007,

by which time the police had already retrieved the Crusher.  Thus, making all

favorable inferences in favor of Plaintiffs, the predicate acts could only have

occurred over a period of six months.  Cf. Wisdom v. First Midwest Bank, of

Poplar Bluff, 167 F.3d 402, 407 (8th Cir. 1999) (holding that "six-month period is

too short to satisfy the closed-ended analysis of the pattern requirement");

<u>Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp.</u>, 986 F.2d 1208,

1215-16 (8th Cir. 1993) ("In this case, the activity lasted between ten and eleven

months and, in light of the growing body of case law that we have just reviewed,

we deem this period insubstantial.").  Multiple Eighth Circuit opinions decided

after and in light of <u>H.J., Inc.</u>, have clearly established that a six-month time

frame encompassing a single scheme targeting the same victim is too short to

establish a closed-ended pattern.  Thus, the Complaint fails to allege an

actionable closed-ended pattern.

### 3.    Existence of Open-Ended Continuity

"Whether the predicates proved establish a threat of continued

racketeering activity depends on the specific facts of each case."  <u>H.J. Inc.</u>, 492

U.S. at 242.

> Although not intending to list all possibilities, the Court listed
> three situations in which a threat of continued racketeering could be
> established: (1) the predicate acts themselves involve an actual threat
> of long-term racketeering activity, either implicit or explicit, (2) "the
> predicate acts or offenses are part of an ongoing entity's regular way
> of doing business," or (3) the predicate acts "are a regular way of
> conducting [an] ongoing legitimate business (in the sense that it is
> not a business that exists for criminal purposes). . . ."

<u>Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank</u>, 934 F.2d 976, 980 (8th Cir. 1991)

18

(footnote omitted) (quoting <u>H.J., Inc.</u>, 492 U.S. at 242-43).

In the Complaint, Plaintiffs have not alleged any facts demonstrating a threat of continued racketeering activity.  In fact, the Complaint claims that the police have recovered the Crusher, the item around which all alleged predicate acts revolved.  Likewise, Plaintiffs have not pled that the predicate acts are part of an ongoing entity's regular way of doing business or that the predicate acts are a regular way of conducting an ongoing legitimate business.   Plaintiffs have not alleged that Defendants are part of a long-term association that exists for criminal purposes.

Plaintiffs claim that, at this point in the litigation, they do not know the full time frame over which the alleged conduct occurred or whether there were any prior supporting acts.  Plaintiffs argue that there could be other unknown predicate acts taken in support of the theft, such as stealing other equipment to facilitate the removal of the Crusher or making payments and depositing them into nationally chartered banks substantially in advance of the crime.  The Court limits its analysis to the pleadings in this case.  Plaintiffs did not allege any of these other possible predicate acts in their Complaint.

Plaintiffs also assert that the claims they have advanced in the Complaint

19

fall into the category of an open-ended pattern of racketeering conduct because the Complaint alleges that Monson and his business entities undertook to damage a competitor.  They argue that a scheme to damage competition is broader than a single act of thievery against one competitor.  Again, limiting its analysis to the pleadings in this case, the Court concludes that Plaintiffs have failed to allege that Defendants took part in a broader scheme to destroy Plaintiffs.  Instead, the Complaint only alleges that, in order to attempt to damage Plaintiffs, Defendants committed one transaction – the theft and attempted sale of the Crusher.

Plaintiffs also assert that, as averred in Lee Stark's affidavit, there is an indication that Stark has been a target of criminal activity for over two years. They surmise that the vandalism and theft against Stark may have been an early assault on his business by one or more Defendants.  They claim that this kind of conduct is a threat to public safety and is the type of conduct Congress intended to target under RICO.  However, the Court will not consider the allegations in the affidavit in the context of these motions to dismiss.  In any case, Stark offers no basis for his belief that past acts of vandalism and theft were committed by Defendants.

20

The Court find that Plaintiffs have failed to plead a pattern of racketeering activity.  If Plaintiffs are alleging an ongoing campaign against them by Defendants, they must state this allegation in their Complaint or allege some other facts that Defendants pose an ongoing threat.  As the Complaint is currently pled, Defendants only formed a conspiracy to steal and sell the Crusher in order to damage Plaintiffs; they carried out their plan; the police intervened; and there is no continuing threat or past pattern of criminal activity.

**F.      Whether the Complaint Alleges Fraud with Specificity**

**1.      Requirements for Pleading Fraud**

Federal Rule of Civil Procedure 9(b)'s requirement that fraud be pled with particularity applies when mail, bank, and wire fraud are used as the basis for a RICO claim.  <u>Abels v. Farmers Commodities Corp.</u>, 259 F.3d 910, 919 (8th Cir. 2001).  "[A] plaintiff must specifically allege the 'circumstances constituting fraud,' Fed. R. Civ. P. 9(b), including 'such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'"  <u>Id.</u> at 920 (citations omitted).  However, "[w]here a plaintiff is not a party to a communication, particularity in pleading may become impracticable. "  <u>Id.</u> at 921.

21

Thus, courts will not "require, before discovery, the pleading of dates and times of communications in furtherance of a scheme to defraud, where the complaint alleges facts supporting the inference that the mails or wires were used." Id. (citations omitted).

### 2.    Common Law Fraud

Plaintiffs claim that the Complaint asserts common law fraud.  However, the Complaint does not list common law fraud as one of the predicate acts and common law fraud cannot serve as a predicate act under RICO.  Smith v. Wampler, 95 Fed. Appx. 194, 195 (8th Cir. 2004) (unpublished).

### 3.    Bank Fraud

Plaintiffs also allege bank fraud in violation of 18 U.S.C. § 1344.  Plaintiffs note that the Complaint expressly alleges that Monson obtained money from the buyer that was on deposit in the buyer's bank and caused it to be delivered to a bank account under Monson's control.  They argue that these allegations meet the substantive requirements of § 1344.

### 4.    Wire and Mail Fraud

Plaintiffs assert that they have properly pled causes of action for wire fraud and mail fraud under 18 U.S.C. §§ 1341, 1343.  The Complaint alleges that

Monson used the mails and wire system to engage the services of an internet auction house to offer the stolen Crusher for sale, to induce the buyer to travel to Minnesota to inspect the Crusher, to make false representations to the buyer (that Monson had authority to sell the Crusher), and to receive the purchase price from the buyer.

### 5.    Analysis

Plaintiffs assert that their fraud allegations are made as specifically as possible.  They admit that they do not allege specific dates and times of calls, internet communications, or transfers; nor do they specify the banks from which the funds were sent and to which the funds were delivered; nor do they name the buyer.  However, Plaintiffs conclude that the allegations are as specific as possible and give fair notice of the claims being asserted.

Plaintiffs' fraud allegations are cursory and vague.  Plaintiffs present no facts regarding the time, place, or contents of the false representations.  Nor do Plaintiffs mention the identity of the person making or receiving the fraudulent representations.

Plaintiffs protest that they are unable to plead with greater specificity without limited discovery because the facts are within the knowledge of

Defendants, Iron Planet, who is subject to a confidentiality agreement, and the police, who will not release information until after a charging decision is made. Because the specifics of the fraud are in the exclusive knowledge of Defendants and other parties who refuse to share information, the Court will not require Plaintiffs to plead the exact dates and contents of the mail and wire communications and fraudulent statements. However, permitting fraud allegations to stand that do not even identify the speaker or the recipient of the fraud, would eviscerate Rule 9(b)'s requirement that fraud be pled with particularity. This is particularly true when there are multiple defendants – as the Complaint is currently pled, Defendants are not on notice of the claim against them because it is not clear which Defendants allegedly committed the fraudulent acts.

G.     **Remedy**

The Court concludes that Plaintiffs' Complaint is fatally flawed because if fails to state a claim for RICO and fails to plead fraud with particularity. Because the Complaint would not survive these motions to dismiss even if the fraud allegations were pled with particularity, the Court denies Defendants' request to allow them to conduct initial, limited discovery in order to ascertain additional

facts and amend their Complaint.  Instead, the Court will dismiss the Complaint

without prejudice.  Plaintiffs can re-file this lawsuit at a later date if they can state

a claim for RICO and plead fraud with sufficient particularity.


Accordingly, **IT IS HEREBY ORDERED**:

1.   Defendant Donnerite Co.'s Motion to Dismiss [Docket No. 5] is
     **GRANTED**.

2.   Motion to Dismiss by the remaining Defendants [Docket No. 10] is
     **GRANTED**.

3.   The Complaint is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**



Dated:  January 22, 2008               s / Michael J. Davis
                                       Judge Michael J. Davis
                                       United States District Court

25